7-5 Thomas v. Pippin 8-5 Thomas v. Pippin 9-5 Thomas v. Pippin Good morning. May it please the court. My name is Doug Thomas and I'm representing the appellants. This appeal is a consolidated interference proceeding initiated by Pippin against Thomas. There's two involved Thomas patents and two involved Thomas patent applications and there's a single Pippin application with a single claim. One issue is whether the board erred as a matter of law in presuming the Thomas patents obvious from the count which is Pippin's claim. Section 282 of the Patent Act specifically states a patent shall be presumed valid. Thomas has two patents. They were presumed invalid by the board. We're submitting that that is an error of law. The Supreme Court did you agree that the position your position on that would run counter to our precedents either what we've said or what we've held. Which doesn't mean I'm assuming that you're referring to your honor. Well there have been about six or seven cases that have been discussed on this issue in the briefs. That's one of them. There's the is it the Apotex footnote that the Apotex footnote makes the general point. I guess I want to know how you read the precedents whether we have done something held something stated something that is that you your position would be inconsistent with. I believe my position is consistent with the Bruning case. The Apotex footnote is slightly broader but that footnote is just pointing to the Bruning decision and has no authority on its own. In the Bruning decision it was also an interference case and there was a validity challenge. And in that case the language sometimes gets a little confusing. But the holding was specifically this quote this court holds during an interference proceeding involving a patent issued from an application that was co-pending with the interfering application. The appropriate standard of proof for validity is the providence of evidence standard. So if we look also at the Supreme Court case I4I in Microsoft that case does go into some detail about distinguishing the burden of proof versus the standard of proof specifically in the context of 282. I think I'm remembering right but tell me if I'm wrong. I4I doesn't discuss interference proceedings or any other intra PTO proceedings right? Correct. That was a district court. But that battle was about not whether this burden of proof or the presumption applied. It's what the standard of proof should be. In our position today. And just one other point on Bruning am I remembering right the party that actually had the issued patents there was the senior party not the junior party? The junior party was the attacking party. Right so that wouldn't be I mean that is in some sense a mirror image of this not sort of squarely on point in what it actually involved. So our position is that the section 282 specifically says that the patent shall be presumed valid. It doesn't go into detail about what the standard of proof should be and that's what most of the cases deal with. But every time the patent office accepts one of these post grant processes whether it's an ex parte re-exam, inter parte re-exam, IPR, CBMs or interferences that presumption evaporates. Once you get through the doors of the PTO for better or worse right or wrong all of the proceedings treat it the same way. And so what you're asking for is some special rule in interferences. You might say well because they're adversarial. Well the same is not true for all IBMs and IPRs and CBMs and everything else. I mean I think that the rule that you're asking for would be at odds with the application the PTO has applied in all of those contexts. It would be a big change. Those cases aren't our case and there's other statutory language to be dealt with in resolving that question. In this case there's no additional statutory language. There's no exception for interferences. They are a multi-party dispute and they are considered to be in the trial division historically of the patent office. So I don't see any reason for saying that there is no presumption just because the trial proceeding is held before the patent office. In the case of In Re Etter that was a re-examination and there is a decision there that the standard of proof should be preponderance. That case even doesn't say that there's no presumption. In that case the challenger to validity always had the burden. And that's true on all the cases that are cited. Can I ask you about a different aspect of your argument? And that is the argument that two pieces of art which really weren't relevantly prior were considered by the board as prior art. This is Ari and Atkinson. This is I guess an argument that goes to six of your claims under the 190 and two of your claims under the 798. And the board relied on combinations that include Ari and Atkinson which post-date your 1994 priority date. If I have that right and tell me if I don't, why is that, assuming that's an error, not a harmless error? Yes, your honor. Generally you have it correct. It can't be harmless to rely on art that's not prior art. That seems to be fundamental. Well, unless there's other art that does the same thing and it's quite evident that the same conclusion would be drawn even without considering Ari. Well, we have to deal with the confines of the decision I would think. Whether there's other art out there, we can't speculate. In the decision, opposing counsel in its papers has tried to say that there are, well, let me back up for a second. In deciding those motions, there were four references considered. Yamaka and Canova are prior art and the other two are not prior art, Ari and Atkinson. Those are the only four references. So those should be the only references in play. Opposing counsel is trying to pull in references that were discussed in other motions, albeit in the same decision. But even doing that, it would not be successful to show the limitations of the associated Thomas claims. So with respect to those motions, the presumption argument would be applicable as one reason why there was a legal defect on those motions. Secondly, the decision is rather weak in its obviousness analysis. It's not really clear how they are combining the references with the count. So this is an obviousness analysis and there should be some articulated reasoning. The count is actually essentially the primary reference. And these other four references are the secondary references, two of which are not prior art. The board never really gave us a good understanding of what they were doing. Third, if we look at the two remaining references that are prior art, they don't have the associated claim language, which deals with the fan speed control based on a power management policy in use. Pippin's expert even agrees that the central way examination unit considered the same art and also agreed. And beyond that, there's even additional language in the claims that the board didn't even comment on. And that's that in addition to the fans being based on the power management policies, there is additional language reciting that the different power management policies use different conditions based on temperature of the processor. So there's a lot of defects with respect to those motions. As to the reliance on the other references somehow being used that weren't discussed, the two references that opposing counsel identified, Dinh and Swami, do deal with fans. And there is some sort of fan speed control. But it's not of the type recited in the claim. It is not based on a power management policy. And it has no notion of different conditions based on different temperatures. Mr. Thomas, you're starting to get into your rebuttal time. I'll hold there. We serve. Thank you. Mr. Fleming. Good morning, and may it please the court, Mark Fleming with my colleague Brittany Amati on behalf of the appellee, Jack Pippin, and the real party in interest, which is Intel. The board's decision is more than supported by substantial evidence, and Mr. Thomas has not shown any reason for reversal. I will touch on the two points that Mr. Thomas discussed in his argument, but I'm, of course, happy to address any issues the court would like to talk about. Can you specifically address the apparent reliance on two pieces of art that aren't prior art? Of course, Your Honor. I mean, we invoked those conditionally in the event that the board agreed with our position that Mr. Thomas was not entitled to the 1994 benefit date that he was originally granted. The board took no position on that. So we did not need to rely on those two references for the various claims that are in the count. But the court did. The board certainly did discuss them. So we think that is the epitome of harmless error, Judge Toronto, because one could take one's blue pencil and strike out all references to Orion Atkinson in the opinion, and the outcome would be exactly the same. How do we know that? The board relies on Yamaki and Canova and discusses them specifically. One looks at the opinion and looks at the discussion where Orion Atkinson first come up. It's on page 46 of the appendix. But if you look before that on page 45, there's a discussion of Yamaki and Canova first. Then after that, the discussion of Orion Atkinson. And then the concluding paragraph on 47, starting at line 16, based on these teachings, we conclude it would have been obvious to a person having ordinary skill to configure a computer system to utilize a first power management policy, citing then after that at line 21, Yamaki and Canova first, and then Orion Atkinson. Do Yamaki and Canova teach anything about taking temperature into account differently, depending on whether the computer is plugged into the wall or into a battery? They certainly do talk about having a different power management policy. Power management, taking temperature into account? The count itself talks about having a temperature threshold. And so when you combine the two power management policies of Yamaki and Canova based on whether you're plugged into the wall or whether you're using a battery with the temperature thresholds that are used in the count, that is what the board relied on. And there's certainly no argument from Mr. Thomas that it would have been beyond the abilities of one of ordinary skill in the art to take the count and improve it using the two different power management policies depending on the power source and use them for temperature. The skill of a skilled artisan only begins the inquiry. The question remains whether the skilled artisan would have a motivation to do what the artisan would be skilled at doing if sufficiently motivated. Certainly, Your Honor. And the board does tell us what the motivation is. It's the motivation the count itself was serving, which was to reduce heat generation, to maximize performance speed. And the board specifically states that that is the reason for combining these. And let's remember, of course, and this goes to some extent to Mr. Thomas' first issue, that the burden is on him as the party trying to change the outcome once the interference is declared. And so it was incumbent upon him to show some evidence that a skilled artisan would not have been able to take these components in a very crowded field with a lot of prior art references. The skilled artisan is not a high school student. It's someone with an advanced degree in electrical engineering and three to seven years of practical experience in this field. And take these very closely related elements and components, all of which are serving the same goals, which is to avoid overheating of computer components, and put them together to produce the Thomas claims in proving the count to do so. And again, the board was well within its authority and is eminently supported by substantial evidence in reaching this conclusion based on Yamaki and Canova. And even if the court were to conclude that it should not have discussed Arai and Atkinson in the context of this opinion, I would submit it would be highly wasteful and the outcome would be foreordained to send it back to the board and say, all right, please reissue your opinion just without mentioning those two references. Well, presumably we wouldn't say that. We would say we really can't tell because you didn't say what your finding would be if you didn't consider those things. We wouldn't have an opinion editing agency. Exactly right, Your Honor. And I think it's clear in reading this opinion that Yamaki, Canova, Arai, and Atkinson were all serving the same purpose in this opinion. Arai and Atkinson are never cited in any portion of the opinion. I mean, it's all just pages 47, 48, and 49. Every time Arai and Atkinson are named, Yamaki and Canova are listed first in the same stream sites. And the discussion of the teachings on which the board is relying are all found in Yamaki and Canova. To go to the burden point just briefly, I think this court's precedent is clear and has stated many times that Section 282 does not apply in this context. It's not just Bruning and Apotex. As recently as last September in Doan Patent v. Lee, which is 799 Fed 3rd 1372, this court was addressing the context of a reexamination that was being appealed to a district court under Section 145. And the court said that because the action before the district court did not involve a defense to a charge of infringement of an issued patent, Section 282 does not apply in this instance. And that's perfectly consistent with I4I, which itself was an infringement case. Section 282 itself appears in a chapter of the U.S. Code entitled Remedies for Infringement of Patent. So we would respectfully submit that the operative governing provisions here are not Section 282 but rather the board's rules. They were properly promulgated under the board's authority. Mr. Thomas has not challenged the authority to promulgate the rules or their application in this case. So we would submit that the board quite properly placed the burden on Mr. Thomas to show, given that he conceded priority, that any of his claims did not correspond to the count or that there was some error in the declaration of the interference. And we believe the board correctly and it was well within its authority, based on substantial evidence, to find that he failed to carry that burden. Unless the court has further questions, we would respectfully submit that the judgment should be affirmed. Thank you. Thank you, Your Honor. The Dohm patent decision mentioned by opposing counsel is similar to in re etter in that it was a reexamination context. And what I was trying to say before applies in this case. There's a little bit of misuse of language in our opinion. That decision is merely saying that the clear and convincing evidence standard of proof does not apply in reexamination. It is not saying that a patent can be presumed invalid. The challenger has the burden. There were also motions filed in this case for no interference in fact, which if you look at the underlying patents and applications and opposing counsel has indicated this crowded art area, it's really hard to imagine why this is even interference. And the reason is because crafty opposing counsel wants to take advantage of the burden of proof being applied to me to show that our patents are in fact valid. I've never seen a context in that scenario that puts the burden on the patent owner. As for the interference in fact motions, there were four of them, and they were trying to show that the two-way obviousness test for the interferences could not be met. And in doing so, it was argued that the Pippin claim was patentable over the Thomas claims. And in resolving those motions, the test does not permit looking to the specification. It's a claim comparison. But the board, in resolving those motions, looked to the Thomas specification. And they quoted a sentence from the specification, namely from the background. They relied on that. And they relied on the second thing. They relied on... Can I just say, the sentence, am I remembering right? The sentence that was relied on from the specification was a sentence about what is well known in the prior art. That is, the board didn't rely on a sentence from the spec, from the Thomas spec, for what it teaches, but rather as evidence of what is otherwise known in the prior art. And the otherwise known in the prior art, that's an acceptable source of the legal analysis, right? They didn't specify that they were doing that. I thought the sentence, the term says what's well known. Yes, I'll read the sentence for you. Thomas's, quote, temperature sensing circuitry is well known and therefore need not further describe, end quote. So that sentence is saying the temperature sensing circuitry is well known, and it is. But the Pippin claim is not... Well, first of all, the Thomas claim, which is the beginning of the analysis, it's a claim by claim. So opposing counsel is trying to tell you that they can look to this for temperature sensing circuitry. But our claim doesn't recite temperature sensing circuitry. So they'll also tell you that, hey, we need to look to the specification for interpreting the language of the claim. But our claim says temperature monitoring. It's a meta-claim. So there's no reason to be looking to the specification. There's nothing unclear. There's no interpretation needed. Final thought, since we've exceeded time. The final thought is the second aspect that the board looked to for the programmable thermal sensor of Pippin was the testimony of our expert. And we pointed out in our reply brief that that testimony is, again, associated with the discussion of the Thomas specification, which is not permitted. Thank you. I thank both parties and the case is submitted.